IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THEODORE E. THOMAS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 15-CV-06015 |
| TODAY'S GROWTH CONSULTANT, INC., | ) ) Judge John J. Tharp, Jr. ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ted Thomas contracted with defendant Today's Growth Consultants, Inc. ("TGC") for TGC to build Thomas an "authority" website on certain kinds of real estate transactions.[1] Def's Statement of Facts ("Def's SOF") ¶ 6, ECF No. 77-1. The agreement required Thomas to pay $133,000 up front to TGC, which he did. The contract also set forth the responsibilities of the parties regarding the website. TGC was to provide 100 "keywords" to Thomas, who would then "weed[] out" 10-20% of the keywords and return the list to TGC. *Id.* ¶ 7;

---

[1] The facts recited are drawn from the defendant's statement of undisputed facts and the exhibits referenced therein and attached to the defendant's motion for summary judgment. The plaintiff did not file a response to that statement pursuant to Local Rule 56.1(b)(3) disputing any of the defendant's fact statements, so those statements are deemed admitted. Further, the plaintiff did file his own statement of undisputed facts pursuant to Local Rule 56.1(b)(3)(C), but that statement simply incorporated statements of fact from the defendant's statement and (save for one irrelevant fact) failed to identify any additional facts that he thought required denial of summary judgment. The Court declined to permit the plaintiff to amend his Rule 56 statement to comply with local rules after concluding that the plaintiff failed to show good cause for his noncompliance and that the defendant would be prejudiced if the plaintiff had leave to amend. ECF No. 98. The Court therefore deems the defendant's statement of facts admitted. *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008) ("District courts are entitled to expect strict compliance with Rule 56.1, and a court does not abuse its discretion when it opts to disregard facts presented in a manner that does not follow the Rule's instructions."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

Consulting Performance Agreement ("Contract") ¶ J, ECF No. 77-2. With the keywords established, the parties would then decide on a domain name and TGC would begin to build the site. Contract ¶ J. Thomas concurrently would begin drafting content for the website based on the established keywords. Once TGC received its 30th piece of content from Thomas, it would recommend taking the site live. *Id*. TGC held an "onboarding" meeting with Thomas in which its employees explained to Thomas how to produce content for the site. Def's SOF ¶ 13.

Instead of providing Thomas with 100 keywords, TGC provided Thomas with 800 keywords (which are better described as "key phrases," as they are all more than one word). Def's SOF ¶ 17; Silo Keywords, Def's Ex. 9, ECF No. 77-2. In two separate emails, TGC employees instructed Thomas to produce content based on 12 specific keywords from the broader list of 800. Def's SOF ¶ 17; Wilterdink E-Mails, ECF No. 77-2. Thomas provided five articles to TGC—well short of the 30 necessary to launch the website. Def's SOF ¶ 18. TGC nonetheless built the website in anticipation of Thomas providing sufficient content. Def's SOF ¶ 22. TGC employees also scripted four podcasts for the website to assist Thomas in producing the necessary content. Def's SOF ¶ 21. Regardless, Thomas still has failed to provide TGC with 30 pieces of content, and though the website is otherwise ready to launch, TGC cannot take the website live without the requisite content. Def's SOF ¶¶ 23-25.

Thomas filed suit against TGC alleging breach of contract and fraud and seeking to rescind the parties' agreement. In Thomas's Third Amended Complaint, the fraud count is premised on allegations that unidentified TGC employee(s) at some point prior to the inception of the parties' agreement told Thomas that TGC could attain page one placement on Google for Thomas's website. Third Amended Complaint ("TAC") ¶¶ 29-39, ECF No. 40. According to the complaint, however, TGC was aware of recent shifts in Google's algorithms that prevented TGC from

obtaining page one placement. *Id*. The unidentified employee(s) also told Thomas that TGC had a team of writers that could produce material for his website when, in reality, no such team existed. *Id*. ¶¶ 24-27, 40-41. TGC now moves for summary judgment on all counts.

## DISCUSSION

### I. Breach of Contract

To succeed on a breach of contract theory under Illinois law, a plaintiff must prove "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Burkhart v. Wolf Motors of Naperville, Inc.*, 2016 IL App (2d) 151053, ¶ 14, 61 N.E.3d 1155, 1159 (Ill. App. Ct. 2016). There is no dispute that the parties in this case entered into a valid contract for the construction of a website. TGC (explicitly, at least) argues only that Thomas cannot establish the second element, plaintiff's performance, because Thomas failed to provide TGC with content necessary to launch the website. Thomas's failure to produce content, however, is justified if TGC materially breached the contract prior to Thomas's nonperformance. *See William Blair and Co. v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 346-47, 830 N.E.2d 760, 779 (Ill. App. Ct. 2005) ("[A] material breach of a contract provision by one party will justify nonperformance by the other.").

The problem with TGC's argument is that it does not account for the order of operations provided for in the contract. Paragraph J of the agreement establishes the schedule the parties were to follow in building the site. The first step in the process was for TGC to provide Thomas with 100 keywords related to the subject matter of the site. Thomas would then be responsible for weeding out 10-20% of the keywords and returning the list to TGC. The keywords were then established, and at that point, Thomas was to draft content based on the keywords.

The record establishes that TGC materially failed to perform at the first step. Whether a breach is material depends on "whether the breach worked to defeat the bargained-for objective of

3

the parties or caused disproportionate prejudice to the non-breaching party." *William Blair*, 830 N.E.2d at 779. In this case, instead of providing Thomas with 100 keywords, TGC provided Thomas with 800 keywords and never narrowed it down to 100. In its briefing, TGC fails to explain why it believes that providing Thomas with 800 keywords was sufficient to meet its contractual obligations. Surely, TGC could not throw a dictionary at Thomas and claim that it complied with the contract because the dictionary contained more than 100 words. Indeed, the contract's purpose—which was to produce an "authority site" that would appear on the first page of Google search results—suggests that providing substantially more than 100 keywords would impede, rather than benefit, the parties' efforts. When it comes to search keywords, more is not necessarily better; part of what Thomas bargained for, a jury could reasonably conclude, was TGC's expertise and judgment in identifying the best—not the most—terms to highlight on the website. The 800th most useful keyword, presumably, would not be as effective at gaming Google's algorithm as the best 100 keywords would be. Moreover, continuing to the next steps in the process outlined in the contract was impossible until TGC provided Thomas with 100—and only 100—keywords. The second step required Thomas to weed out 10-20% of the 100 keywords provided to him, after which the base keys would be "established." Thomas could not weed out 10-20% of 100 keywords, and the keywords could not be locked in, if Thomas was presented with a list of 800 keywords and not told which 100 he should be using. Thomas could not, consequently, "draft[] content . . . addressing topics associated with 100 assigned keywords provided by the project manager" without a list of 100 assigned keywords. Contract ¶ D, ECF No. 77-2.[2]

---

[2] TGC asserts that it narrowed the keywords down for Thomas, but cites only to two emails in which an employee identified 12 keywords for Thomas, well short of the 100 TGC was contractually obligated to provide. Wilterdink E-Mails, ECF No. 77-2.

"A party to a contract may not complain of the nonperformance of the other party where that performance is prevented by his own actions." *Barrows v. Maco, Inc.*, 94 Ill. App. 3d 959, 966, 419 N.E.2d 634, 639 (Ill. App. Ct. 1981). Here, the only contractual duty that TGC argues Thomas failed to perform—drafting sufficient content for the authority site—was rendered impossible by TGC's own material breach. Thomas assuredly could have drafted material generically related to the theme of the website, but that isn't what the contract called for; it called for him to draft content "addressing topics associated with 100 assigned keywords." TGC cannot defeat Thomas's breach of contract claim by pointing to a failure to perform that it caused. Accordingly, its motion for summary judgment on Thomas's breach of contract claim is denied.

## II. Fraud

TGC also argues that it is entitled to summary judgment on Thomas's fraud count. It makes two arguments in support of that position. The first is that the plaintiff's Third Amended Complaint fails to comply with Federal Rule of Civil Procedure 9's demand for particularity in alleging fraud. This argument is unavailing. TGC's motion is styled as a motion for summary judgment, and in any event TGC attached several documents outside the pleadings to its motion. Rule 12(d) requires that "[i]f . . . matters outside the pleadings are presented to and not excluded by the court," a motion to dismiss "must be treated as one for summary judgment under Rule 56." And in pursuing summary judgment, TGC cannot rely on pleading deficiencies; it must instead "show[] that there is no genuine dispute as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (summary judgment decisions address "not the content of complaints but the evidence needed to take a claim to a jury"); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) ("[A] motion to dismiss tests the legal sufficiency of a pleading. Its factual sufficiency will be

tested later—by a motion for summary judgment under Rule 56, and if necessary by trial."); *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 484 (6th Cir. 2014) ("Rule 9(b) imposes a pleading requirement . . . and challenges to the sufficiency of the pleadings must be asserted in a motion to dismiss under Rule 12(b)(6) rather than on summary judgment."). To do so, it must adduce evidence to support a judgment in its favor rather than rely on a claim that the opponent's pleadings provide inadequate notice or otherwise fall short.

TGC offers no evidence to show that it did not make the fraudulent statements Thomas attributes to it;[3] instead, it attempts to avoid the need to make that showing by pointing to the contract's integration clause. The clause notes: "The Agreement and the agreements, Exhibits, Schedules, and documents referred to herein contain the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersede all prior agreements and understandings, whether written or oral, relating to such subject matter in any way." Contract ¶ T(6). TGC posits that this integration clause defeats Thomas's fraud-in-the-inducement count because Thomas disclaimed reliance on statements made outside the four corners of the contract.

TGC is again mistaken. In *Vigortone AG Products, Inc. v. PM AG Products, Inc.*, 316 F.3d 641 (7th Cir. 2002), the Seventh Circuit assessed the then-unsettled question of whether, under Illinois law, an integration clause bars consideration of extrinsic evidence in evaluating a plaintiff's fraud-in-the-inducement theory. The court distinguished between standard integration clauses and so-called "no reliance" clauses, under which the parties to a contract expressly indicate that they

---

[3] Because TGC's summary judgment motion does not dispute the complaint's allegations regarding the statements on which Thomas bases his fraud claim, Thomas had no need to support those allegations with evidence (and did not). TGC's arguments in support of its summary judgment motion as to the fraud count are legal in nature; whether there is any fact dispute about whether the statements were made is not material to the resolution of TGC's arguments.

6

did not rely on extrinsic statements in entering into the agreement. The Seventh Circuit explained that while a "no reliance" clause defeats an element of fraud-in-the-inducement—reliance on the allegedly false extrinsic statement—a standard integration clause does not. *Id*. at 645. The court noted, however, that because Illinois courts had yet to address the issue, its decision was not necessarily definitive. *Id*. at 644.

The Appellate Court of Illinois ratified *Vigortone* two years later in *W.W. Vincent and Co. v. First Colony Life Insurance Co.*, 351 Ill.App.3d 752, 760, 814 N.E.2d 960, 968 (Ill. App. Ct. 2004). The court adopted the rule that "an integration clause will not preclude a plaintiff from relying upon extrinsic evidence in order to establish a cause of action for fraud." *Id*. The integration clause in *W.W. Vincent* provided that "This Agreement . . . supersedes all prior discussions and agreements between the parties with respect to the subject matter of this Agreement, and this Agreement . . . contains the sole and entire agreement between the parties hereto with respect to the subject matter hereof." 814 N.E.2d at 966. The integration clause in this case is indistinguishable. It does not expressly address reliance on extrinsic statements, instead noting only that the contract contains "the entire agreement and understanding between the parties hereto with respect to the subject matter hereof" and that it "supersede[s] all prior agreements and understandings, whether written or oral, relating to such subject matter in any way." Contract ¶ T(6). Because the provision cited by TGC is a standard integration clause and not a more specific "no reliance" clause, it does not defeat Thomas's fraud-in-the-inducement claim.[4] *See Sears Home*

---

[4] TGC's opening brief fails to cite *Vigortone*. Its reply brief maintains that *Vigortone* "actually supports the Defendant's claim for Summary Judgment in its favor" because the Seventh Circuit reversed the fraud verdict. But the fraud reversal had nothing to do with the application of the integration clause and the Seventh Circuit held, notwithstanding the reversal, that the integration clause did not provide a defense to the fraud claim because it did not include a "no reliance" clause. *Vigortone* is directly on point and an interpretation of state law by the Seventh Circuit is binding precedent in this circuit. *Wesbrook v. Ulrich*, 840 F.3d 388, 399 (7th Cir. 2016)

7

*Appliance Showrooms, LLC v. Charlotte Outlet Store, LLC*, No. 17 CV 8478, 2018 WL 3068459, at *6 (N.D. Ill. June 21, 2018) (applying *W.W. Vincent*'s rule to an integration clause that contained no explicit reference to reliance, but provided that "[t]here are no oral or other written understandings, representations, or agreements between you and us relating to the subject matter of this Agreement").[5]

\* \* \*

For the foregoing reasons, the defendant's motion for summary judgment is denied.

Dated: July 20, 2018

John J. Tharp, Jr.
United States District Judge

---

("Absent signals from the state courts or other developments that call into question an earlier *Erie Railroad* prediction [by the Seventh Circuit], the principal of stare decisis controls."). If failing to cite controlling precedent and then frivolously attempting to distinguish it away were not bad enough, TGC digs its hole even deeper by citing to this Court's ruling in *Pardo v. Mecum Auto Inc.*, 2017 WL 1217198 (N.D. Ill. Mar. 31, 2017) for support. But *Pardo* involved an express disclaimer of reliance—precisely what is missing here; it provides no support at all for TGC's argument. TGC's efforts to transform *Vigortone* from sow's ear to silk purse are so devoid of merit that they are difficult to excuse as good faith error.

[5] The Court also rejects TGC's assertion that it is entitled to summary judgment on Thomas's rescission count. The bulk of TGC's argument is that Thomas is not entitled to rescission because his breach of contract and fraud counts fail. For the reasons explained above, however, the Court declines to grant TGC summary judgment on those counts. TGC also posits that rescission requires Thomas to put TGC back in the position it held before the contract was formed, and that Thomas cannot do so because TGC expended, in building Thomas's website, more than the $133,000 Thomas paid. Even if this were a proper legal basis to defeat a rescission remedy, TGC provides no evidence of the value of the services it provided to Thomas. The Court therefore will not grant TGC summary judgment on Thomas's rescission count.